5 UNITED STATES DISTRICT COURT

6 EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| 7  SUZANNE B., <br> 8                  Plaintiff, <br> 9     v. <br> 10 COMMISSIONER OF SOCIAL <br>     SECURITY ADMINISTRATION, <br> 11                 Defendant. | NO:  1:17-CV-3089-TOR <br><br> ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

12

13       BEFORE THE COURT are the parties' cross motions for summary

14 judgment (ECF Nos. 22, 30).  The Court has reviewed the administrative record

15 and the parties' completed briefing and is fully informed.  For the reasons

16 discussed below, the Court **GRANTS** Defendant's motion and **DENIES** Plaintiff's

17 motion.

18                                         **JURISDICTION**

19      The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g),

20 1383(c)(3).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under §405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.*, at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted).

The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

**FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R.

§ 416.960(c)(2); *Bray*, 554 F.3d at 1222.

# BACKGROUND

Plaintiff filed an application for Title XVI supplemental security income benefits on July 16, 2013. Tr. 16. Plaintiff's application was denied initially and upon reconsideration. *Id*. Plaintiff filed a written request for a hearing, which was held on May 4, 2015, before Administrative Law Judge (ALJ). *Id*. The ALJ denied benefits. Tr. 16-29.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 16, 2013, the amended alleged onset date. Tr. 19. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, obesity, affective disorder, and anxiety disorder. *Id*. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. Tr. 20. The ALJ then concluded:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(h) except the (sic) follows. She can occasionally lift and or carry up to 20 pounds; frequently lift and/or carry up to 10 pounds; stand and/or walk about six hours in an eight-hour workday, sit about six hours in an eight-hour workday with normal breaks. She can unlimitedly push, and/or pull, including operation of hand or foot controls. She can frequently climb ramps or stairs, kneel, and crouch. She can occasionally stoop, crawl, and climb ladders, ropes or scaffolds. She is limited to occasional overhead reaching bilaterally. She can unlimitedly handle, finger, and feel with bilateral hands. She has no visual or communication limits. She must avoid concentrated exposure to extreme cold, noises,

vibration, excessive fumes, odors, dusts, gases, poor ventilation, and
workplace hazards, such as dangerous machinery and unprotected
heights. She can perform simple, routine tasks and follow short,
simple instructions. She can do work that needs little or no judgment
and can perform simple duties that can be learned on the job in a short
period of less than 30 days. She can appropriately respond to
supervision and co-workers and deal with occasional changes in the
work environment. She has no difficulty dealing with the public.

Tr. 22. At step four, the ALJ found Plaintiff had no past relevant work. Tr. 27. At step five, considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that Plaintiff was capable of making successful adjustment to other work that exists in significant numbers in the national and regional economy in representative occupations such as assembler, cashier II, and hand packager. Tr. 28. On that basis, the ALJ concluded that Plaintiff was [not] disabled as defined in the Social Security Act. Tr. 29.

Plaintiff thereafter filed a request for review with the Appeal's Council, which was denied. Tr. 4. The ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 422.201.

## ISSUES

Plaintiff raises two issues for review:

1. Did the ALJ err by rejecting Plaintiff's symptom testimony for reasons that were not specific, clear, and convincing?
2. Did the ALJ err in evaluating the medical opinion evidence?

ECF No. 22 at 2.

# DISCUSSION

A. **Credibility**

In social security proceedings, a claimant must prove the existence of physical or mental impairment with "medical evidence consisting of signs, symptoms, and laboratory findings." 20 C.F.R. §§ 416.908; 416.927 (eff. to Mar. 26, 2017). As long as the impairment "could reasonably be expected to produce [the] symptoms," the claimant may offer a subjective evaluation as to the severity of the impairment. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (*en banc*). If an ALJ finds the claimant's subjective assessment unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

If there is no evidence of malingering, the ALJ's reasons for discrediting the claimant's testimony must be "specific, clear and convincing." *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (quotation and citation omitted). In making this determination, the ALJ may consider, *inter alia*: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Id.* The

ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

Plaintiff argues "[t]he ALJ erred on relying on [her] daily activities because she consistently reported serious limitations in performing her daily activities and the few activities she can participate in do not translate to a work setting." ECF No. 22 at 10. The ALJ did not use Plaintiff's daily activities to show they were transferrable to a work setting. The ALJ found Plaintiff's daily activities inconsistent with her claimed severely limiting symptoms, a credibility determination. Tr. 24. Substantial evidence supports the ALJ's finding that Plaintiff "takes care of her own hygiene, meals, housework, finances, and two children. . . [she] has the ability to drive a car, shop for groceries, attend church, go to sport events, read, watch television, play computer games, and communicate on the phone and on internet." *Id*. The ALJ found that her husband was recently incarcerated and she alone is able to care for her three children, two who are disabled. This constitutes specific, clear and convincing evidence.

Second, Plaintiff argues "the ALJ incorrectly states that [her] primary care provider opined that her 'ability to work or look for work is not limited by the reported back issue.'" ECF No. 22 at 12. Plaintiff contends the provider stated that she was "unable to stand or walk for back pain" and that she was "unable to

participate" in working, looking for work, or preparing for work. *Id*. (citing Tr. 350-51).

Plaintiff is wrong. The ALJ correctly recited the provider's opinion because the provider checked the "No" box to the question "Does the physical . . . condition . . . limit the person's ability to work, look for work, or prepare for work?" Plaintiff's quotations are also correct but those were accompanied by a recommendation for physical therapy and an opinion that Plaintiff would only be limited from work for a period of 6 months. Tr. 351. Accordingly, no error has been shown.

Plaintiff also complains the ALJ erroneously failed to consider the September 2014, MRI evidence of a herniated disc compressing the nerve root and the exacerbation of her condition after her first surgery because the ALJ cannot cherry pick the evidence. ECF No. 22 at 12-13. This argument is not supported by the ALJ's recitation of the evidence. Specifically, the ALJ observed:

> The record shows that, since a 2004 accident, the claimant suffers from back pain, and displays decreased range of motion of the back (1F). In September 2013, the claimant complained of back pain. Physician Assistant Troba noted that the claimant shows tenderness and limited range of motion of the back (5F13-14). September 2013 images of the lumbar spine revealed degenerative disc disease at L6-Sl (5F11). In December 2013, she underwent a LS-L6 laminectomy (8F5). December 2014 MRI scan showed postoperative changes at L4-5 laminectomy with recurrent left L5-6 disc herniation (10F11). Later that month, she underwent another lumbar spine surgery, and Michael Chang, M.D., diagnosed recurrent L5-6 disc herniation,

causing nerve compression and radiculopathy after the operation (10F7).

Tr. 23. While not specifically referencing a September 2014 MRI, the ALJ acknowledged all the major spine related events including the subsequent surgery in December 2014, the reason and the results of that surgery. No error has been shown.

Third, Plaintiff complains that the ALJ cannot use her own statements to reject her symptom testimony. ECF No. 22 at 13-14. Plaintiff contends the ALJ found that she reported she was "feeling better" in September 2013, but that reference was to her diabetes not her back pain when walking. The ALJ quoted from the subjective portion of the medical record and while it was typed in the Impaired Fasting Glucose section, it seems to address her whole person, not just her glucose levels: "she has been compliant with taking her metformin. She has noticed that her glucose levels are improving. She is feeling better. She is exercising, walking a few times per week." Tr. 312. Read in context, no error has been shown.

Plaintiff admits that the surgery was helpful but contends she is limited by residual back pain and restricted range of motion. Plaintiff contends her statements cannot be used to reject her debilitating symptom testimony. The ALJ quoted from the record:

> In February 2014, Nurse Garrison noted that the claimant reported "dramatically improved" back pain since December 2013 surgery (8F5). Likewise, in December 2014, Ismael Vargas, PA-C,also noted that the claimant reported 80 to 90 percent improvement in pain after surgery and good response to pain medication. The claimant specifically noted that she is no longer experiencing any radiating left leg pain (10F1). Furthermore, in March 2015, Mr. Vargas noted that the claimant said she is "doing well" and "very pleased" with the result of the back surgery (10F4). At the hearing, the claimant estimated that she can lift and/or carry 25 pounds at most.

Tr. 25. Plaintiff has not shown the ALJ erred in evaluating the evidence and finding her residual functional capacity given her limitations.

Fourth, Plaintiff complains that her failure to take her medications in early 2013 were the result of lack of insurance, thus, the ALJ cannot support an adverse credibility finding based on that reason. ECF No. 22 at 14-15. Plaintiff is correct, the record shows a lack of insurance as the reason for failing to take pain medication in January 2013, 6-months prior to the alleged onset date. Tr. 316.

Here, substantial evidence supports the ALJ's ultimate finding discounting Plaintiff's testimony which is justified by specific, clear and convincing reasons. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162–63 (9th Cir. 2008) (an ALJ's error is harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record).

//

B. **Review of Medical Opinions**

A treating physician's opinions are generally entitled to substantial weight in social security proceedings. *Bray*, 554 F.3d at 1228 (citation omitted); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) ("By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians.") (citing 20 C.F.R. § 404.1527)). "[I]f a treating physician's opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it will be given controlling weight.'" *Orn*, 495 F.3d at 631 (quoting 20 C.F.R. § 404.1527(d)(2)) (brackets omitted). "To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence. If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted).

Plaintiff argues the ALJ erred by giving significant weight to Dr. Hander's opinion because it was made "without the benefit of records from Orthopedics Northwest, which included two MRIs from 2012 and 2014 showing a herniated disc impinging on the nerve root and two back surgeries." ECF No. 22 at 16. The

ALJ recognized this limitation because he noted that Dr. Hander's opinion was formed in December 2013. The ALJ proceeded to discuss the subsequent medical evidence and health care providers, so no specific error has been shown by also discussing Dr. Hander's evaluation of the evidence and opinion at that time.

Plaintiff argues that the ALJ should not have rejected Dr. Chang's opinion because it was given less than a month after surgery. Plaintiff contends that "the ALJ should have (1) realized that she had already been disabled for over 12 months at the time of her second major back surgery, and (2) sought a supplemental opinion from Dr. Chang to determine what limitations remained after her surgery." ECF No. 22 at 17. Again, the ALJ discussed subsequent medical evidence and merely discounted Dr. Chang's severe limitations because they incorporated the immediate post-operation limitations formed less than a month after the surgeon performed complex surgical procedures on Plaintiff. No error has been shown. Tr. 27.

Plaintiff contends the ALJ erred in failing to consider PA-C, Jeffrey Van Troba's opinion when evaluating the medical opinion evidence. ECF No. 22 at 18. Plaintiff reasons that Mr. Van Troba 's opinion may have an effect on the outcome of the case because he "stated that [Plaintiff] was 'unable to stand or walk for back pain,' and opined that she should be limited to 0 hours (or unable to participate) in working, looking for work, or preparing for work." *Id*. (citing Tr. 350, 351).

Despite that physician assistants are not "acceptable medical sources" under the regulations, *see* 20 C.F.R. §§ 404.1513, 416.913 (eff. Sept. 3, 2013 to Mar. 26, 2017), the ALJ referred to and mentioned Mr. Van Troba's reports and opinions several times. As discussed above, Mr. Van Troba checked the "No" box to the question "Does the physical . . . condition . . . limit the person's ability to work, look for work, or prepare for work?" Plaintiff's quotations are also correct but those were accompanied by Mr. Van Troba's recommendation for physical therapy and an opinion that Plaintiff would only be limited from work for a period of 6 months. Tr. 351. Accordingly, no error has been shown.

**IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 22) is **DENIED**.

2. Defendant's Motion for Summary Judgment (ECF No. 30) is **GRANTED**.

The District Court Executive is hereby directed to file this Order, enter Judgment for Defendant, provide copies to counsel, and **CLOSE** the file.

**DATED** July 19, 2019.



THOMAS O. RICE
Chief United States District Judge